COPY

STEVEN A. GROODE, Bar No. 210500
MATTHEW J. SHARBAUGH, Bar No. 260830
LITTLER MENDELSON
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA 90067.3107
Telephone: 310.553.0308
Facsimile: 310.553.5583
E-mail: sgroode@littler.com;
msharbaugh@littler.com

Attorneys for Defendant
MEDLINE INDUSTRIES, INC.

FILED
CLERK, U.S. DISTRICT COURT

JAN 2 6 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JESUS LEYVA, on behalf of himself
and other members of the general
public similarly-situated,

                    Plaintiff,

v.

MEDLINE INDUSTRIES, INC., a
California Corporation; and DOES 1
through 50, inclusive,

                    Defendants.

Case No. EDCV 11-0164 JAP (MANx)

NOTICE OF REMOVAL OF CIVIL
ACTION TO FEDERAL COURT BY
DEFENDANT MEDLINE
INDUSTRIES, INC.

[28 U.S.C. §§ 1332, 1441, 1446]

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

1   **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**

2   **CENTRAL DISTRICT OF CALIFORNIA, AND PLAINTIFF JESUS LEYVA**

3   **AND HIS ATTORNEYS OF RECORD:**

4         PLEASE TAKE NOTICE that Defendant Medline Industries, Inc. ("Medline"

5   or "Defendant") hereby removes the above-captioned action from the Superior Court

6   of California for the County of Los Angeles to the United States District Court for the

7   Central District of California.  This removal is based on 28 U.S.C. sections 1332(d),

8   1441 and 1446, and specifically, on the following grounds:

9         **STATEMENT OF JURISDICTION**

10       1.    This Court has original jurisdiction over this action pursuant to the Class

11   Action Fairness Act of 2005 ("CAFA").  *See* 28 U.S.C. § 1332(d).  In relevant part,

12   CAFA grants district courts original jurisdiction over civil class actions filed under

13   federal or state law in which any member of a class of plaintiffs is a citizen of a state

14   different from any defendant, and where the amount in controversy for the putative

15   class members in the aggregate exceeds the sum or value of $5,000,000, exclusive of

16   interest and costs.  As set forth below, this case meets all of CAFA's requirements for

17   removal and is timely and properly removed by the filing of this Notice.

18         **VENUE**

19       2.    The action was filed in Superior Court of California for the County of

20   San Bernardino.  Thus, venue properly lies in the United States District Court for the

21   Central District of California.  *See* 28 U.S.C. §§ 84(c), 1391(a), 1441(a).

22       **PLEADINGS, PROCESS AND ORDERS**

23       3.    On October 29, 2010, Plaintiff Jesus Leyva ("Plaintiff"), on behalf of

24   himself and others members of the public similarly situated, filed a class action

25   complaint in the Superior Court of California for the County of San Bernardino,

26   entitled *JESUS LEYVA, individually and on other members of the general public*

27   *similarly situated v. MEDLINE INDUSTRIES, INC., a California Corporation; and*

28   *DOES 1 through 50, inclusive,* Case No. CIVDS 1015046 (herein referred to as the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

1   "Complaint").   As alleged in his Complaint, the putative classes Plaintiff seeks to

2   represent consist of the following:

3            a.      Class A: Current and former non-exempt employees of Defendants

4   employed in California at any time beginning four years preceding the filing of this

5   Complaint, who were employed in a position in which he or she earned commissions,

6   bonuses or other similar compensation (including but not limited to "Attendance

7   Bonus" and "IPP Bonus" and "Stimulus Bonus" and "Warehouse Bonus"), worked

8   more than eight (8) hours per work day and/or 40 hours per work week in any work

9   week, and were not compensated for said overtime or double-time hours by proper

10  premium pay in which the bonuses, commissions or similar compensation were

11  included as part of the regular rate (the "Overtime Premium Pay Class").  (Compl. ¶

12  17.)

13           b.      Class B: Current and former non-exempt, hourly employees of

14  Defendants employed as warehouse workers in California at any warehouse facility,

15  including but not necessarily limited to the facilities in San Bernardino and Lathrop, at

16  any time beginning four years preceding the filing of this Complaint (the "Time

17  Shaving Class").  (Compl. ¶ 17.)

18           c.      Class C: Current and former employees of Defendants employed in

19  California at any time beginning four years preceding the filing of this Complaint,

20  who were not furnished an itemized written statement semi-monthly or at the time

21  each wage payment reflecting the gross wages earned, total hours worked by the

22  employee, all deductions, net wages earned, the inclusive dates of the pay period for

23  which the employee is paid, the name of the employee and his or her social security

24  number, the name and address of the legal entity that is the employer and/or all

25  applicable hourly rates in effect during the pay period and the corresponding number

26  of hours workeda t each hourly rate by the employee (the "California Wage Statement

27  Class").  (Compl. ¶ 17.)

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

2.

d.    Class D: Former employees of Defendants employed in California, who were either terminated and/or resigned from their employment at any time beginning four years preceding the filing of this Complaint, who were not paid all wages due to them at time of their resignation and/or termination as a result of the failure to include commissions and/or bonuses in the regular rate or as a result of the "time shaving" alleged herein (the "California Waiting Time Class"). (Compl. ¶ 17.)

4.    Plaintiff's Complaint sets forth six (6) purported causes of action for: (1) Failure to Pay Overtime and Double-Time Wages at Proper Rate (California Labor Code §§ 510 and 1194 and Industrial Welfare Commission Wage Order 1-2001); (2) Failure to Pay Minimum Wages (California Labor Code §§ 1194, 1194.2, 1197 and 1197.1); (3) Failure to Pay Overtime and Double-Time Wages (California Labor Code §§ 510 and 1194 and Industrial Welfare Commission Wage Order 1-2001); (4) Failure to Properly Itemize Paystubs (California Labor Code §§ 226(a) and 226(e); (5) Failure to Pay Wages Due at Time of Termination (California Labor Code §§ 201, 202 and 203); and (6) Unfair Business Practices (California Business and Professions Code § 17200). (*See* Compl.)   A true and correct copy of the Summons and Complaint is attached to this Notice as **Exhibit A.**

5.    As of the date of this Removal, no other defendants have been named or served with a copy of the Complaint.

6.    On January 24, 2010, Medline filed an Answer to Plaintiff's Complaint in the Superior Court of California for the County of San Bernardino.  Attached hereto as **Exhibit B** is a true and correct copy of Medline's Answer.

7.    To Medline's knowledge, no further process, pleadings, or orders related to this case have been filed in San Bernardino County Superior Court.

## TIMELINESS OF REMOVAL

8.    This Notice of Removal is timely, in that 28 U.S.C. section 1446(b) requires that a notice of removal in a civil action must be filed within thirty (30) days after service of the summons and complaint.  28 U.S.C. § 1446(b); *see also Murphy*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

3.

1   *Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (holding that the

2   30-day removal period begins to run upon ***service*** of the summons and complaint).

3   Although Plaintiff filed his Complaint in San Bernardino Superior Court on October

4   29, 2010, Medline was not served with a copy of the Summons and Complaint until

5   December 27, 2010. Accordingly, this Notice of Removal is timely.

## DIVERSITY JURISDICTION PURSUANT TO CAFA

7       9.    CAFA grants federal district courts original jurisdiction over civil class

8   action lawsuits filed under federal or state law in which any member of a class of

9   plaintiffs is a citizen of a state different from any defendant, and where the matter's

10  amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28

11  U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28

12  U.S.C. § 1446. As set forth below, this case meets each CAFA requirement for

13  removal, and is timely and properly removed by the filing of this notice.

14      10.   Specifically, this Court has jurisdiction over this case under CAFA

15  because it is a civil class action wherein: (1) the proposed class contains at least 100

16  members; (2) Defendant is not a state, state official or other governmental entity; (3)

17  there is diversity between at least one class member and one defendant; and (4) the

18  amount in controversy for all class members exceeds $5 million.

## THE PROPOSED CLASS CONTAINS MORE THAN 500 MEMBERS

20      11.   Although Plaintiff's Complaint enumerates four (4) distinct classes he

21  seeks to represent, these classes essentially boil down to non-exempt employees in

22  California, who were employed by Defendant at any time since October 29, 2006.

23  (*See* Compl. 17.)   This putative class, as defined by Plaintiff, contains at least 538

24  members. (Declaration of David Bernier in Support of Notice of Removal ("Bernier

25  Decl.") ¶ 4.)

## MEDLINE IS NOT A GOVERNMENTAL ENTITY

27      12.   Medline is not a state, a state official or any other governmental entity.

28  Rather, as set forth more fully below, Medline is a corporation organized under the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

Firmwide:99762502.3 049790.1008                                    4.

1   laws of the State of Illinois.  (Declaration of Alex Liberman in Support of Removal

2   ("Liberman Decl.") ¶ 3.)

3   ## PLAINTIFF'S CITIZENSHIP IS DIVERSE FROM MEDLINE'S

4   ## CITIZENSHIP

5   13.    CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any

6   member of a class of plaintiffs is a citizen of a State different from any defendant."  28

7   U.S.C. §§ 1332(d)(2)(A); 1453(b); *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th

8   Cir. 2005).

9   14.    Here, minimal diversity of citizenship exists because Plaintiff and

10  Medline are citizens of different states, in that Plaintiff is a California citizen and

11  Medline is a citizen of the State of Illinois.

12  15.    **Plaintiff's Citizenship.**  Plaintiff is a citizen of the State of California.

13  Plaintiff's Complaint expressly avers that, at all relevant times, "Plaintiff was and is a

14  residents [sic] of the County of San Bernardino, State of California."  (Compl. ¶ 7.)

15  For diversity purposes, a person is a "citizen" of the state in which she is domiciled.

16  *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983); *see also*

17  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that

18  person's domicile is the place she resides with the intention to remain).  Accordingly,

19  Plaintiff is a citizen of the State of California.

20  16.    **Medline's Citizenship.**  Turning to Medline's citizenship, for diversity

21  purposes, a corporation "shall be deemed a citizen of any State by which it has been

22  incorporated and of the State where it has its principal place of business."  28 U.S.C. §

23  1332(c)(1).  In this regard, Medline was, at the time of the filing of this action, and

24  remains, a citizen of the State of Illinois.

25  17.    Medline is incorporated in the State of Illinois and its principal place of

26  business is in Mundelein, Illinois.  (Liberman Decl. ¶¶ 3-4.)

27  18.    As to the latter aspect of the corporate citizenship analysis, the United

28  States Supreme Court recently addressed the varying approaches to the "principal

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

5.

place of business" analysis and announced a single, uniform test to be applied in making such a determination. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192, 175 L. Ed. 2d 1029 (U.S. 2010). Specifically, the Court held that the "nerve center" test should be used to determine a corporation's "principal place of business." *Id.*

19.     To this end, a corporation's "nerve center" is normally located where the corporation maintains its corporate headquarters and where the "corporation's officers direct, control, and coordinate the corporation's activities." *Id.* In other words, a corporation's "principal place of business" can be found where its "brain" is located. *Id.* at 1193. This analysis focuses on the place at which the corporation's executive and administrative functions are conducted. *See Indus. Tectronics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092-93 (9th Cir. 1990); *see also State Farm Fire & Cas. Co. v. Byrd*, 710 F. Supp. 1292, 1293 (N.D. Cal. 1989) (determining "nerve center" by examining, among other factors, where the corporation's headquarters are located and where its principal policy and executive decisions are made).

20.     Applying the above analysis, the principal place of business, or "nerve center," of Medline is indisputably located in Mundelein, Illinois. Indeed, Medline's corporate headquarters are located in Illinois and nearly all of the executive and administrative functions of Medline are carried out at its Illinois headquarters location. (Liberman Decl. ¶ 4.)

21.     Accordingly, Medline is not a citizen of California, but rather it is a citizen of Illinois, for purposes of determining diversity of citizenship. *See, e.g.*, *Breitman v. May Co.*, 37 F.3d 562, 564 (9th Cir. 1994) (corporation was citizen of state in which its corporate headquarters were located and where its executive and administrative functions were performed); *Hertz Corp*, 130 S. Ct. at 1192.

22.     Defendants Does 1 through 50 are fictitious. The Complaint does not set forth the identity or status of any fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants. Thus, pursuant to Section 1441(a), the citizenship of defendants sued under fictitious names must be disregarded

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067-3107
310.553.0308

Firmwide:99762502.3 049790.1008

6.

1    for purposes of determining diversity jurisdiction and cannot destroy the diversity of

2    citizenship between the parties in this action. *See Newcombe v. Adolf Coors Co.*, 157

3    F.3d 686, 690-91 (9th Cir. 1998).

4        23.    Accordingly, because Plaintiff is a citizen of a State different from

5    Medline, minimal diversity exists for purposes of establishing CAFA jurisdiction. *See*

6    28 U.S.C. §§ 1332(d)(2)(A), 1453(b).

7    **THE AGGREGATE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000**

8        24.    This Court has jurisdiction under CAFA, which authorizes the removal of

9    a class action in which, among other factors mentioned above, the amount in

10   controversy for all class members exceeds $5 million. 28 U.S.C. § 1332(d).

11       25.    Plaintiff's Complaint is silent as to the amount in controversy for the

12   alleged class in the aggregate. Under CAFA, where a complaint "fails to plead a

13   specific amount of damages, the defendant seeking removal 'must prove by a

14   preponderance of the evidence that the amount in controversy requirement has been

15   met.'" *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 998 (9th Cir. 2007)

16   (quoting *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006)).

17       26.    To this end, Medline can establish the amount in controversy by relying

18   upon the allegations in the Complaint, and by setting forth facts in the Notice of

19   Removal that demonstrate that the amount in controversy "more likely than not"

20   exceeds the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d

21   398, 404 (9th Cir. 1996); *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 984 (S.D.

22   Cal. 2005) ("[T]he requirement under CAFA that the amount in controversy exceed

23   $5,000,000 in the aggregate may be established either from the viewpoint of the

24   plaintiff or the viewpoint of the defendant."). Further, in addition to the contents of

25   the removal petition, the Court properly considers "summary-judgment-type evidence

26   relevant to the amount in controversy at the time of removal," such as affidavits or

27   declarations, in assessing the amount in controversy. *Valdez v. Allstate Ins. Co.*, 372

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

7.

Firmwide:99762502.3 049790.1008

1  F.3d 1115, 1117 (9th Cir. 2004); *Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373,

2  377 (9th Cir. 1997).

3      27.   In measuring the amount in controversy, the Court must assume that the

4  allegations of the Complaint are true and that a jury will return a verdict in favor of

5  Plaintiff in all claims asserted in her Complaint. *Kenneth Rothschild Trust v. Morgan*

6  *Stanley Dean Witter*, 199 F. Supp. 2d 1001 (C.D. Cal. 2002). The ultimate inquiry is

7  the amount that is put "in controversy" by Plaintiff's Complaint, and not how much, if

8  anything, Defendant will actually owe. *Rippee*, 408 F. Supp. 2d at 986; *see also*

9  *Schere v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 399 (2d Cir.

10  2003) (recognizing that the ultimate or provable amount of damages is not what is

11  considered in the removal analysis; rather, it is the amount put in controversy by the

12  plaintiff's complaint).

13      28.   Medline denies the validity and merit of the entirety of Plaintiff's alleged

14  claims, the legal theories upon which they are ostensibly based and the alleged claims

15  for monetary and other relief that flow therefrom. However, for purposes of removal

16  only, and without conceding that Plaintiff or the putative class is entitled to any

17  damages or penalties whatsoever, it is readily apparent that the aggregated claims of

18  the putative class establish an amount in controversy well in excess of the jurisdiction

19  minimum of $5,000,000.

20      29.   In his Complaint, Plaintiff asserts a variety of alleged claims on behalf of

21  himself and the putative classes he seeks to represent, and in turn, he seeks, among

22  other remedies: (1) compensation allegedly miscalculated overtime wages, which

23  Plaintiff contends were calculated using a "regular rate" that did not include certain

24  bonus compensation (Compl. ¶¶ 20-27); (2) minimum wage compensation for alleged

25  off-the-clock work  (Compl. ¶¶ 28-38); (3) overtime compensation for alleged off-the-

26  clock overtime work (Compl. ¶¶ 39-47); (4) penalties for allegedly inaccurate wage

27  statements (Compl. ¶¶ 48-52); (5) waiting time penalties under Labor Code section

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067-3107
310.553.0308

Firmwide:99762502.3 049790.1008

8.

1   203 (Compl. ¶¶ 53-57), and (6) statutory interest on all his alleged claims.   (Compl.,

2   Prayer for Relief), among other claims.[1]

3       30.   **Wage Rate Overtime Claim.**   As set forth in his Complaint, Plaintiff

4   asserts a claim for failure to pay overtime wages at the proper rate.   (Compl. ¶¶ 20-

5   27.)   To this end, Plaintiff contends that certain bonuses should be factored into the

6   regular rate used to calculate overtime premium.   (*Id.*)   Specifically, Plaintiff alleges

7   that at least four, distinct categories of bonus pay were excluded from the "regular-

8   rate" calculation: (1) Attendance Bonus; (2) IPP or "Performance" Bonus; (3)

9   Warehouse Bonus; and (4) Stimulus Bonus. (Compl. ¶ 9.)

10      31.   Medline paid these specifically-identified bonuses to certain employees

11  during the applicable time period, each of which is discussed separately below.   The

12  following figures are applicable to each specific bonus:

13      a.   The total number of overtime hours worked by California

14  employees since October 29, 2006 is 171,484.72 hours.   (Bernier Decl. ¶ 5.)

15      b.   Of the total putative class members, 330 were employed during the

16  year 2007.   Thus, the average number of overtime hours worked during 2007 was 130

17  overtime hours per employee (130 = 171,484.72 ÷ 330 ÷ 4)   (Bernier Decl. ¶ 6.)

18      c.   Of the total putative class members, 300 were employed during the

19  year 2008.   Thus, the average number of overtime hours worked during 2008 was 143

20  overtime hours per employee (143 = 171,484.72 ÷ 300 ÷ 4)   (Bernier Decl. ¶ 7.)

21      d.   Of the total putative class members, 322 were employed during the

22  year 2009.   Thus, the average number of overtime hours worked during 2009 was 133

23  overtime hours per employee (133 = 171,484.72 ÷ 322 ÷ 4) (Bernier Decl. ¶ 8.)

24      e.   Of the total putative class members, 288 were employed during the

25  year 2010.   Thus, the average number of overtime hours worked during 2007 was 149

26  overtime hours per employee (149 = 171,484.72 ÷ 288 ÷ 4) (Bernier Decl. ¶ 9.)

27  _____

28  [1] Plaintiff also seeks equitable relief and restitution for Medline's alleged "unlawful" activities, per Business and Professions Code § 17200. (Compl. ¶¶ 58-60.)

LITTLER MENDELSON
A Professional Corporation
2048 Century Park East
5th Floor
Los Angeles, CA  90067-3107
310.553.0308

Firmwide:99762502.3 049790.1008

f.     The total number of workweeks for all 538 putative class members during the applicable period is 46,260 weeks.  (Bernier Decl. ¶ 10.)  This amounts to an average of 87.7 workweeks per employee over the applicable for year period, or 21.94 work weeks per year.  (*Id.*)    Accordingly, the average number of total hours worked each year, per employee, amounts to 877 hours (21.94 weeks x 40 hours/week = 877.6 hours).

32.    **Attendance Bonus:** The Attendance Bonus is paid to eligible employees on a quarterly basis, based on compliance with Medline's attendance policies.  (Bernier Decl. ¶ 11.)  Medline paid Attendance Bonuses to eligible employees during each year of the applicable period, from 2007 through 2010.  (*Id.*)

33.    In 2007, 54 employees were paid an Attendance Bonus, with each receiving an average of $117.05 in Attendance Bonus earnings.  (Bernier Decl. ¶ 12.)  Therefore, because the average number of annual hours worked is 877 hours, this resulted in an average hourly-rate increase of $0.13 per hour, per employee.  ($0.13 = $117.05 ÷ 877).    The applicable alleged overtime premium increase as to the Attendance Bonus is therefore $0.20 per hour.  ($0.20 = $0.13 x 1.5).  Thus, with 54 employees working an average of 130 overtime hours each during 2007, the total amount at issue with regard to the Attendance Bonus during 2007 is **$1,404** ($1,404 = $0.20 x 54 x 130).

34.    In 2008, 107 employees were paid an Attendance Bonus, with each receiving an average of $196.40 in Attendance Bonus earnings.  (Bernier Decl. ¶ 12.)  Therefore, because the average number of annual hours worked is 877 hours, this resulted in an average hourly-rate increase of $0.22 per hour, per employee.  ($0.22 = $196.40 ÷ 877).    The applicable alleged overtime premium increase as to the Attendance Bonus is therefore $0.33 per hour.  ($0.33 = $0.22 x 1.5).  Thus, with 107 employees working an average of 143 overtime hours each during 2008, the total amount at issue with regard to the Attendance Bonus during 2008 is **$5,049** ($5,049 = $0.33 x 107 x 143).

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

10.

Firmwide:99762502.3 049790.1008

35.   In 2009, 127 employees were paid an Attendance Bonus, with each receiving an average of $308.55 in Attendance Bonus earnings. (Bernier Decl. ¶ 12.) Therefore, because the average number of annual hours worked is 877 hours, this resulted in an average hourly-rate increase of $0.35 per hour, per employee. ($0.35 = $308.55 ÷ 877).   The applicable alleged overtime premium increase as to the Attendance Bonus is therefore $0.53 per hour. ($0.53 = $0.35 x 1.5). Thus, with 127 employees working an average of 133 overtime hours each during 2009, the total amount at issue as to the Attendance Bonus during 2009 is **$8,952** ($8,952 = $0.53 x 127 x 133).

36.   In 2010, 172 employees were paid an Attendance Bonus, with each receiving an average of $380.30 in Attendance Bonus earnings. (Bernier Decl. ¶ 12.) Therefore, because the average number of annual hours worked is 877 hours, this resulted in an average hourly-rate increase of $0.435 per hour, per employee. ($0.43 = $380.30 ÷ 877).   The applicable alleged overtime premium increase as to the Attendance Bonus is therefore $0.65 per hour. ($0.65 = $0.43 x 1.5). Thus, with 172 employees working an average of 149 overtime hours each during 2010, the total amount at issue as to the Attendance Bonus during 2010 is **$16,658** ($16,658 = $0.65 x 172 x 149).

37.   Accordingly, the total amount in controversy based on Plaintiff's contention that Medline failed to include the Attendance Bonus in the "regular rate" in determining applicable overtime premiums can be summarized as follows:

| Year | Average Hourly Rate Increase Per Employee | Overtime Premium | Average Overtime Hours Per Employee | # of Employees Receiving Bonus | Amount At Issue |
|---|---|---|---|---|---|
| 2007 | $0.13 | $0.20 | 130 | 54 | **$1,404** |
| 2008 | $0.22 | $0.33 | 143 | 107 | **$5,049** |
| 2009 | $0.35 | $0.53 | 133 | 127 | **$8,952** |
| 2010 | $0.43 | $0.65 | 149 | 172 | **$16,658** |
| TOTAL | | | | | **$32,063** |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

38.   **IPP Bonus.**  The "IPP Bonus" is considered "Performance Bonus" by Medline and is payable to certain Medline employees based upon their conformity to applicable performance standards promulgated by Medline.  (Bernier Decl. ¶ 13.) Medline paid Performance Bonuses to eligible employees during each year of the applicable period, from 2007 through 2010.  (*Id.*)

39.   In 2007, 171 employees were paid a Performance Bonus, with each receiving an average of $836.05 in Performance Bonus earnings.  (Bernier Decl. ¶ 14.) Therefore, because the average number of annual hours worked is 877 hours, this resulted in an average hourly-rate increase of $0.95 per hour, per employee.  ($0.95 = $836.05 ÷ 877).  The applicable alleged overtime premium increase as to the Performance Bonus is therefore $1.43 per hour.  ($1.43 = $0.95 x 1.5).  Thus, with 171 employees working an average of 130 overtime hours each during 2007, the total amount at issue with regard to the Performance Bonus during 2007 is **$31,788** ($31,788 = $1.43 x 171 x 130).

40.   In 2008, 148 employees were paid a Performance Bonus, with each receiving an average of $1,435.63 in Performance Bonus earnings.  (Bernier Decl. ¶ 14.)  Therefore, because the average number of annual hours worked is 877 hours, this resulted in an average hourly-rate increase of $1.64 per hour, per employee.  ($1.64 = $1,435.63 ÷ 877).  The applicable alleged overtime premium increase as to the Performance Bonus is therefore $2.46 per hour.  ($2.46 = $1.64 x 1.5).  Thus, with 148 employees working an average of 143 overtime hours each during 2008, the total amount at issue with regard to the Performance Bonus during 2008 is **$47,330** ($47,330 = $2.46 x 148 x 130).

41.   In 2009, 158 employees were paid a Performance Bonus, with each receiving an average of $1,342.81 in Performance Bonus earnings.  (Bernier Decl. ¶ 14.)  Therefore, because the average number of annual hours worked is 877 hours, this resulted in an average hourly-rate increase of $1.53 per hour, per employee.  ($1.53 = $1,342.81 ÷ 877).  The applicable alleged overtime premium increase as to the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

1   Performance Bonus is therefore $2.30 per hour.  ($2.30 = $1.53 x 1.5).  Thus, with

2   158 employees working an average of 133 overtime hours each during 2009, the total

3   amount at issue with regard to the Performance Bonus during 2008 is **$48,332**

4   ($47,330 = $2.30 x 158 x 133).

5       42.   In 2010, 145 employees were paid a Performance Bonus, with each

6   receiving an average of $2,210.94 in Performance Bonus earnings.  (Bernier Decl. ¶

7   14.)  Therefore, because the average number of annual hours worked is 877 hours, this

8   resulted in an average hourly-rate increase of $2.52 per hour, per employee.  ($1.53 =

9   $2,210.94 ÷ 877).   The applicable alleged overtime premium increase as to the

10  Performance Bonus is therefore $3.78 per hour.  ($3.78 = $2.52 x 1.5).  Thus, with

11  145 employees working an average of 149 overtime hours each during 2010, the total

12  amount at issue with regard to the Performance Bonus during 2010 is **$81,667**

13  ($47,330 = $3.78 x 145 x 149).

14      43.   Accordingly, the total amount in controversy based on Plaintiff's

15  contention that Medline failed to include the Performance Bonus in the "regular rate"

16  in determining applicable overtime premiums can be summarized as follows:

| Year | Average Hourly Rate Increase Per Employee | Overtime Premium | Average Overtime Hours Per Employee | # of Employees Receiving Bonus | Amount At Issue |
|------|------|------|------|------|------|
| 2007 | $.95 | $1.43 | 130 | 171 | **$31,788** |
| 2008 | $1.64 | $2.46 | 143 | 148 | **$47,330** |
| 2009 | $1.53 | $2.30 | 133 | 158 | **$48,332** |
| 2010 | $2.52 | $3.78 | 149 | 145 | **$81,667** |
| TOTAL | | | | | **$209,117** |

17      44.   **Warehouse Bonus.**   The "Warehouse Bonus" is payable to Medline

18  employees based upon their conformity to applicable performance standards

19  promulgated by Medline, separate and apart from the additional "Performance Bonus"

20  described above.  (Bernier Decl. ¶ 15.)  Medline paid Warehouse Bonuses to eligible

21  employees during each year of the applicable period, from 2007 through 2010.  (*Id.*)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

45.   In 2007, 258 employees were paid a Warehouse Bonus, with each receiving an average of $1,235.83 in Warehouse Bonus earnings.  (Bernier Decl. ¶ 16.)  Therefore, because the average number of annual hours worked is 877 hours, this resulted in an average hourly-rate increase of $1.41 per hour, per employee.  ($1.41 = $1,235.83 ÷ 877).   The applicable alleged overtime premium increase as to the Warehouse Bonus is therefore $2.12 per hour.  ($2.12 = $1.41 x 1.5).  Thus, with 258 employees working an average of 130 overtime hours each during 2007, the total amount at issue with regard to the Warehouse Bonus during 2007 is **$71,105** ($71,105 = $2.12 x 258 x 130).

46.   In 2008, 255 employees were paid a Warehouse Bonus, with each receiving an average of $1,340.91 in Warehouse Bonus earnings.  (Bernier Decl. ¶ 16.)  Therefore, because the average number of annual hours worked is 877 hours, this resulted in an average hourly-rate increase of $1.53 per hour, per employee.  ($1.53 = $1,340.91 ÷ 877).   The applicable alleged overtime premium increase as to the Warehouse Bonus is therefore $2.30 per hour.  ($2.30 = $1.53 x 1.5).  Thus, with 255 employees working an average of 143 overtime hours each during 2008, the total amount at issue with regard to the Warehouse Bonus during 2008 is **$83,870** ($83,870 = $2.30 x 255 x 143).

47.   In 2009, 269 employees were paid a Warehouse Bonus, with each receiving an average of $1,642.38 in Warehouse Bonus earnings.  (Bernier Decl. ¶ 16.)  Therefore, because the average number of annual hours worked is 877 hours, this resulted in an average hourly-rate increase of $1.87 per hour, per employee.  ($1.87 = $1,642.38 ÷ 877).   The applicable alleged overtime premium increase as to the Warehouse Bonus is therefore $2.81 per hour.  ($2.81 = $1.87 x 1.5).  Thus, with 269 employees working an average of 133 overtime hours each during 2009, the total amount at issue with regard to the Warehouse Bonus during 2009 is **$100,533** ($100,533 = $2.81 x 269 x 133).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

14.

48.    In 2010, 224 employees were paid a Warehouse Bonus, with each receiving an average of $1,867.73 in Warehouse Bonus earnings. (Bernier Decl. ¶ 16.)  Therefore, because the average number of annual hours worked is 877 hours, this resulted in an average hourly-rate increase of $2.13 per hour, per employee. ($2.13 = $1,867.73 ÷ 877).   The applicable alleged overtime premium increase as to the Warehouse Bonus is therefore $3.20 per hour. ($3.20 = $2.13 x 1.5).  Thus, with 224 employees working an average of 149 overtime hours each during 2010, the total amount at issue with regard to the Warehouse Bonus during 2010 is **$106,803** ($106,803 = $3.20 x 224 x 149).

49.    Accordingly, the total amount in controversy based on Plaintiff's contention that Medline failed to include the Warehouse Bonus in the "regular rate" in determining applicable overtime premiums can be summarized as follows:

| Year | Avg. Hourly Rate Increase | Overtime Premium | Average Yearly OT Hours | # of Employees Receiving Bonus | Amount At Issue |
|------|------|------|------|------|------|
| 2007 | $1.41 | $2.12 | 130 | 258 | $71,105 |
| 2008 | $1.53 | $2.30 | 143 | 255 | $83,870 |
| 2009 | $1.87 | $2.81 | 133 | 269 | $100,533 |
| 2010 | $2.13 | $3.20 | 149 | 224 | $106,803 |
| TOTAL | | | | | $362,311 |

50.    **Stimulus Bonus.** The "Stimulus Bonus" was payable to certain Medline employees quarterly and only during 2008 and 2009. (Bernier Decl. ¶ 17.)

51.    In 2008, 202 employees were paid a Stimulus Bonus, with each receiving an average of $215.50 in Stimulus Bonus earnings. (Bernier Decl. ¶ 18.)  Therefore, because the average number of annual hours worked is 877 hours, this resulted in an average hourly-rate increase of $0.25 per hour, per employee. ($0.25 = $215.50 ÷ 877).  The applicable overtime premium increase as to the Stimulus Bonus is therefore $0.38 per hour. ($0.38 = $0.25 x 1.5).  Thus, with 202 employees working an average

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

15.

of 143 overtime hours each during 2008, the total amount at issue with regard to the Stimulus Bonus during 2008 is **$10,977** ($10,977 = $0.38 x 202 x 143).

52.    In 2009, 183 employees were paid a Stimulus Bonus, with each receiving an average of $120.77 in Stimulus Bonus earnings.  (Bernier Decl. ¶ 18.)  Therefore, because the average number of annual hours worked is 877 hours, this resulted in an average hourly-rate increase of $0.14 per hour, per employee.  ($0.14 = $120.77 ÷ 877).  The applicable alleged overtime premium increase as to the Stimulus Bonus is therefore $0.21 per hour.  ($0.21 = $0.14 x 1.5).  Thus, with 183 employees working an average of 133 overtime hours each during 2009, the total amount at issue with regard to the Stimulus Bonus during 2009 is **$5,112** ($5,112 = $0.21 x 183 x 133).

53.    Accordingly,  the  total  amount  in  controversy  based  on  Plaintiff's contention that Medline failed to include the Warehouse Bonus in the "regular rate" in determining applicable overtime premiums can be summarized as follows:

| Year | Avg. Hourly Rate Increase | Overtime Premium | Average Yearly OT Hours | # of Employees Receiving Bonus | Amount At Issue |
|---|---|---|---|---|---|
| 2008 | $0.25 | $0.38 | 143 | 202 | **$10,997** |
| 2009 | $0.14 | $0.21 | 133 | 183 | **$5,112** |
| TOTAL | | | | | **$16,109** |

54.    Therefore,  the  amount  in  controversy  with  respect  to  Plaintiff's  Wage Rate  Claim  for  each  of  the  specifically  enumerated  bonuses—even  when conservatively assessing only those employees who actually earned the alleged bonus at issue, despite Plaintiff's broader allegations in the Complaint—is **$619,600**:

| Year | Attendance Bonus | Performance Bonus | Warehouse Bonus | Stimulus Bonus | Annual Totals |
|---|---|---|---|---|---|
| 2007 | $1,404 | $31,788 | $71,105 | -- | **$104,297** |
| 2008 | $5,049 | $47,330 | $83,870 | $10,997 | **$147,246** |
| 2009 | $8,952 | $48,332 | $100,533 | $5,112 | **$162,929** |
| 2010 | $16,658 | $81,667 | $106,803 | -- | **$205,128** |
| TOTAL | $32,063 | $209,117 | $362,311 | $16,109 | **$619,600** |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

16.

55. **Off-The-Clock Wage Claim.** Plaintiff also seeks to recover compensation for alleged off-the-clock hours for which Medline purportedly failed to pay Plaintiff and the putative class he seeks to represent. (Compl. ¶¶ 28-38.) Although Plaintiff's Complaint does not expressly specify the number of hours he and the putative class members allegedly worked off the clock, he does aver that Medline "maintained a policy or practice of illegal time-shaving of employees' time, which resulted in not compensating employees for all hours worked." (Compl. ¶ 34.)

56. For purposes of removal, Medline conservatively assumes that Plaintiff and the putative class members performed one (1) hour of off-the-clock work per week worked for which they seek minimum wage compensation.

57. As set forth above, there are 538 putative class members who were employed by Medline at some point during the applicable period—from October 29, 2006 through the present. (Bernier Decl. ¶ 4.) Accordingly, to determine the potential amount in controversy with regard to Plaintiff's minimum wage off-the-clock claim, Medline multiplied each employee's hourly rate by the number of workweeks he/she was employed by Medline during the applicable period—an ultimate figure that represents one additional hour of pay per workweek. (Declaration of Gregory P. Wong in Support of Removal ("Wong Decl.") ¶ 2, Ex. A.) Based on these estimates, the total amount in controversy based on this claim is **$409,704**. (*Id.*)

58. **Off-The-Clock Overtime Claim.** Plaintiff also seeks to recover compensation for alleged off-the-clock hours for which Medline purportedly failed to pay Plaintiff and the putative class he seeks to represent—hours that Plaintiff contends should have been paid at an overtime premium rate. (Compl. ¶¶ 39-47.) Although Plaintiff's Complaint does not expressly specify the number of overtime hours he and the putative class members allegedly worked off the clock, he does aver that, as a result of Medline's alleged "time-shaving practices," the Company "committed overtime and double-time violations by failing to pay for all overtime or double-time hours worked." (Compl. ¶ 44.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

59.   For purposes of removal, Medline conservatively assumes that Plaintiff and the putative class members performed two (2) hours of overtime work off-the-clock per week worked, as alleged in the Complaint.  Notably, Medline's calculations are particularly conservatively, given that its estimates do not account for any alleged double-time hours that Plaintiff contends he and the putative class members allegedly worked off-the-clock.

60.   As set forth above, there are 538 putative class members who were employed by Medline at some point during the applicable period—from October 29, 2006 through the present.  (Bernier Decl. ¶ 4.)   Accordingly, to determine the potential amount in controversy with regard to Plaintiff's off-the-clock overtime claim, Medline multiplied each employee's hourly rate by 1.5, to determine the applicable overtime premium for each respective employee.  (Wong Decl. ¶ 2, Ex. A.) Thereafter, Medline multiple these figures by the number of workweeks each employee was employed during the applicable period, and multiplied those figures by two (2), representing two alleged off-the-clock overtime estimates per week.  (*Id.*) Based on these estimates, the total amount in controversy based on this claim is **$2,220,912.**  (*Id.*)

61.   **Wage Statement Penalties.**   Plaintiff further seeks to recover penalties on behalf of herself and the putative class members under Labor Code section 226(a), based on Medline's purported failure to furnish accurate, itemized wage statements. (Compl. 53-59.)  In this regard, the Labor Code provides for a potential penalty of $50 for the first violation, per employee, and $100 for each subsequent violation, per employee.  CAL. LABOR CODE § 226(e).  This alleged claim is subject to a one-year statute of limitations.   See CAL. CIV. PROC. CODE. § 340 (one-year statute of limitations govern claims for penalties); *see also Murphy v. Kenneth Cole Prods., Inc.* (2007) 40 Cal. 4th 1094, 1118 n.16 (confirming that claims for itemized wage statement violations are governed by a one-year statute of limitations).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

62.     There are at least 304 putative class members who were employed by Medline for at least part of the relevant period—*i.e.*, on or after October 29, 2009. With regard to these 304 employees, the amount placed in controversy by Plaintiff's alleged Wage Statement Claim is **$808,200.** (Wong Decl. ¶ 2, Ex. A.)

63.     **Waiting Time Penalties.**  In addition, Plaintiff seeks to recover under California Labor Code section 203, which provides for "waiting time penalties" for employees who were not paid all wages owed upon their separation, and whose employment with Medline ended within the three years preceding the filing of the Complaint.  CAL. LABOR CODE § 203; *see also Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389 (2010) (confirming 3-year statute of limitations for Labor Code 203 penalties).  The maximum penalty authorized under Labor Code section 203 is thirty (30) days of wages per employee.  CAL. LABOR CODE § 203

64.     In this regard, of the total number of putative class members, 204 ceased working at Medline during the relevant time period—at some point after October 29, 2007.  (Wong Decl. ¶ 2, Ex. A.)  Accordingly, multiplying each employees' hourly rate at the time of his/her termination by 8 hours per day, for a sum total of 30 days, the total amount placed in controversy by Plaintiff's alleged Waiting Time claim is **$624,811.** (*Id.*)

65.     **Interest.**  Plaintiff's Complaint also seeks statutory interest on all of the claims set forth above.  In this regard, the applicable interest rate for any action for non-payment of wages is 10% simple annual interest.  *See* CAL. LABOR CODE § 218.6; CAL. CIV. CODE § 3289(b).  Applying this interest rate to the principal amount placed in controversy by Plaintiff's alleged claims over the applicable statutory period(s), Plaintiff's prayer for statutory interest on each of his alleged claims places an additional **$1,251,534** in controversy. (Wong Decl. ¶ 3, Ex. B.)

66.     **Summary.**  Thus, the total potential recovery placed in controversy by Plaintiff's alleged claims is at **$5,934,761**, in addition to potentially recoverable attorneys' fees, also sought by Plaintiff:

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

Firmwide:99762502.3 049790.1008

19.

| Plaintiff's Alleged Claim | Amount in Controversy |
|---|---|
| Wage Rate Claim (Bonus Miscalculation) | $619,600 |
| Unpaid Off-the-Clock Work | $409,704 |
| Unpaid Off-the-Clock Overtime | $2,220,912 |
| Labor Code § 226(a) Penalties | $808,200 |
| Waiting Time Penalties | $624,811 |
| Statutory Interest | $1,251,534 |
| **Amount in Controversy Subtotal for Portion of the Entire Putative Class** | **$5,934,761** |

67.     Furthermore, the Court may consider the attorneys' fees that Plaintiff seeks to recover pursuant to Labor Code Sections 1194(a) and other statutory authority, in determining whether the amount in controversy has been satisfied. (*See* Compl., Prayer for Relief.) *See, e.g., Bell v. Preferred Life,* 320 U.S. 238 (1943); *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-56 (9th Cir. 1998) (properly including prayer for attorneys' fees in determining amount in controversy where potentially recoverable by statute); *Goldberg v. C.P.C Int'l, Inc.,* 678 F.2d 1365, 1367 (9th Cir. 1982) (stating that attorneys' fees may be taken into account to determine jurisdictional amounts).

68.     Accordingly, although Medline fully denies Plaintiff's claims of wrongdoing as alleged in his Complaint, the jurisdictional minimum is satisfied for purposes of determining amount in controversy, as it readily exceeds the $5,000,000 threshold required under CAFA.

## NOTICE TO PLAINTIFF AND STATE COURT

69.     Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be given by the undersigned to Plaintiff's Counsel of Record, the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

20.

Firmwide:99762502.3 049790.1008

1  deRubertis Law Firm and Lavi & Ebrahimian, LLP, and a copy of the Notice of

2  Removal will be filed with the Clerk of the San Bernardino Superior Court.

3  Dated:   January 26, 2011                         Respectfully submitted,

4                                                    LITTLER MENDELSON, P.C.

5

6

7                                                    STEVEN A. GROODE
                                                     MATTHEW J. SHARBAUGH
8                                                    Attorneys for Defendant
                                                     MEDLINE INDUSTRIES, INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

21.

Firmwide:99762502.3 049790.1008

# EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
12/27/2010
CT Log Number 517799392

**TO:** Jim Abrams
Medline Industries, Inc.
1 Medline Pl.
Mundelein, IL 60060

**RE:** **Process Served in California**

**FOR:** Medline Industries, Inc. (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Jesus Leyva, on behalf of himself and other members of the general public similarly-situated, Pltf. vs. Medline Industries, Inc., etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Demand for Jury Trial, Cover Sheet, Instructions, Certificate, Notice of Case Assignment, Case Management Conference and Order to Show Cause, Attachment(s) |
| **COURT/AGENCY:** | San Bernardino County, Superior Court, CA<br>Case # CIVDS1015046 |
| **NATURE OF ACTION:** | Employee Litigation - Class Action - Failure to pay overtime, double-time wages at proper rate, minimum wages, wages due at time of termination and properly itemize paystubs |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/27/2010 at 14:55 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - File written response // 4/29/11 at 8:30 a.m. - Case Management Conference // 15 days prior to hearing - File Case Management Statement |
| **ATTORNEY(S) / SENDER(S):** | David M. deRubertis<br>The deRubertis Law Firm<br>4219 Coldwater Canyon Avenue<br>Studio City, CA 91604<br>818-761-2322 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Standard Overnight , 794265426393 |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of 1 / VI

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

12-27-10
2:55

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

| | |
|---|---|
| **NOTICE TO DEFENDANT:** MEDLINE INDUSTRIES, INC., a California *(AVISO AL DEMANDADO):* Corporation; and DOES 1 through 50, inclusive, | **FOR COURT USE ONLY** *(SOLO PARA USO DE LA CORTE)* <br><br> **FILED** <br> SUPERIOR COURT <br> COUNTY OF SAN BERNARDINO <br> SAN BERNARDINO DISTRICT <br><br> **OCT 29 2010** <br><br> By _____ Deputy |
| **YOU ARE BEING SUED BY PLAINTIFF:** JESUS LEYVA, on behalf of *(LO ESTÁ DEMANDANDO EL DEMANDANTE):* himself and other members of the general public similarly-situated, | |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | **CASE NUMBER:** *(Número del Caso):* |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* <br> San Bernardino County Superior Court <br> 303 West 3rd Street <br> 303 West 3rd Street <br> San Bernardino, California 92415-0008 | **CIVDS 1015046** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David M. deRubertis, Esq. (SBN 208709)        818.761.2322        818.761.2323
THE deRUBERTIS LAW FIRM
4219 Coldwater Canyon Avenue
Studio City, California 91604

DATE: October 29, 2010                       Clerk, by _____LISA M. TAYLOR_____, Deputy
*(Fecha)*                                    *(Secretario)*                          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**[SEAL]**

**COPY**

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* **Medline Industries, Inc.**

   under: ☒ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

*Legal Solutions Plus*

Code of Civil Procedure §§ 412.20, 465

Page 1 of 1

1  David M. deRubertis, State Bar No. 208709
   Kimberly Y. Higgins, State Bar No. 245174
2  The deRubertis Law Firm
   4219 Coldwater Canyon Avenue
3  Studio City, California 91604
   Telephone:    (818) 761-2322
4  Facsimile:    (818) 761-2323
   E-Mail: David@deRubertisLaw.com
5  E-Mail: Kim@deRubertisLaw.com

6  Joseph Lavi, State Bar No. 209776
   N. Nick Ebrahimian, State Bar No. 219270
7  Jordan Bello, State Bar No. 243190
   Yameen Salahuddin, State Bar No. 220003
8  LAVI & EBRAHIMIAN, LLP
   8383 Wilshire Blvd.
9  Suite 840
   Beverly Hills, California 90211
10 Telephone:    (323) 653-0086
   Facsimile:    (323) 653-0081

11
   Attorneys for Plaintiff JESUS LEYVA, on behalf of
12 himself and other members of the general public
   similarly-situated

13

14        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15            **FOR THE COUNTY OF SAN BERNARDINO**

16

17  JESUS LEYVA, on behalf of himself and    ) Case No.: _____
    other members of the general public similarly-)
18  situated,                                  ) **CLASS ACTION**
                                               )
19                                             ) **COMPLAINT FOR DAMAGES AND**
                                               ) **INJUNCTIVE RELIEF:**
20             Plaintiff,                       )
                                               ) (1) Failure to Pay Overtime and Double-Time
21                                             ) Wages at Proper Rate (California Labor Code
                                               ) §§510 and 1194 and Industrial Welfare
22        v.                                   ) Commission Wage Order 1-2001 [8 Cal. Code
                                               ) Regs. §11010]);
23                                             )
                                               ) (2) Failure to Pay Minimum Wages (California
24  MEDLINE INDUSTRIES, INC., a California     ) Labor Code §§1194, 1194.2, 1197 and
    Corporation; and DOES 1 through 50,       ) 1197.1);
25  inclusive,                                 )
                                               ) (3) Failure to Pay Overtime and Double-Time
26                                             ) Wages (California Labor Code §§510 and
                                               ) 1194 and Industrial Welfare Commission
27             Defendants.                      ) Wage Order 1-2001 [8 Cal. Code Regs.
                                               ) §11010]);
28

                                     - 1 -
                **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**CIVDS** 1 0 1 5 0 4 6

FILED
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

OCT 2 9 2010

By _____
                    Deputy

(4) Failure to Properly Itemize Paystubs (California Labor Code §§226(a) and 226(e));

(5) Failure to Pay Wages Due at Time of Termination (California Labor Code §§201, 202 and 203); and

(6) Unfair Business Practices (California Business & Professions Code §17200).

**JURY TRIAL DEMAND**

Plaintiff, JESUS LEYVA, on behalf of himself and other members of the general public similarly-situated, hereby alleges against Defendants MEDLINE INDUSTRIES, INC.; and DOES 1 through 50, inclusive, as follows:

**GENERAL ALLEGATIONS**

1.   The true names, identities, or capacities whether individual, corporate, associate, or otherwise, of Defendants, DOES 1 through 50, inclusive, are unknown to the Plaintiff, who therefore sue said Defendants by such fictitious names.  When the true names, identities or capacities of such fictitiously designated Defendants are ascertained, Plaintiff will ask leave of this Court to amend this Complaint and to insert said true names, identities, and capacities, together with the proper charging allegations.

2.   Plaintiff is informed and believes and thereon allege that each of the Defendants sued herein as a DOE is responsible in some manner and liable herein for negligent, wanton, reckless, and tortious conduct, strict liability, and by such wrongful conduct, proximately caused the Plaintiff's injuries and damages.

3.   Defendants MEDLINE INDUSTRIES, INC.; and DOES 1 through 20, inclusive, were corporations, associations, partnerships, joint ventures, or other business entities, organized and existing under the laws of the State of California and at all times herein mentioned conducted business in the State of California, as well as in various locations throughout the United States,

-2-

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  including in the County of San Bernardino, at the location of 1089 E. Mill Street, San Bernardino,

2  California 92408.

3      4.    Defendants DOES 21 through 50, were individuals who were the agents,

4  employees, members, volunteers, servants, partners, representatives, independent contractors, joint

5  venturers or other participants with or of Defendants MEDLINE INDUSTRIES, INC.; and DOES

6  1 through 20, inclusive, and in doing the things hereinafter mentioned, were acting within the

7  course and scope of said agency, employment, membership or other relationship with said

8  Defendants.  At all times herein mentioned, Defendants DOES 21 through 35 were employees of

9  Defendants MEDLINE INDUSTRIES, INC., a California Corporation; and DOES 1 through 20,

10  inclusive who held supervisory positions within the company.

11      5.    At all times herein mentioned, Defendants, whether or not specifically identified or

12  designated herein as a DOE, and each of them, were the agents, employees, servants, partners,

13  independent contractors, joint venturers and participants with all other Defendants, and with each

14  other, and in doing the things hereinafter mentioned, were agents, employees, servants, partners,

15  joint venturers, and with the consent and permission of the co-Defendants, and each of them.

16      6.    Plaintiff names said Defendants herein, and each of them, because Plaintiff is in

17  doubt and does not know exactly from which of the said Defendants Plaintiff is entitled to redress

18  in light of the fact that the injuries and damages to Plaintiff herein alleged were caused by the

19  combined negligence of all of the Defendants, or one or more of them.  For that reason, Plaintiff

20  names all of the said Defendants, and asks that the Court determine the liability of each and all of

21  the said Defendants in this action and to what extent and what responsibility falls upon each of

22  said Defendants, and that the Court award judgment to Plaintiff as against such or all Defendants,

23  either jointly or separately, as may be found liable.

24

25

26

27

28

- 3 -

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    FACTUAL ALLEGATIONS REGARDING ALL CLAIMS

2        A.    Description of the Parties

3        7.    Plaintiff, Jesus Leyva, brings this action on behalf of himself and other members of

4    the general public similarly-situated.  The named Plaintiff, and the class of persons on whose

5    behalf this action is filed, are current or former employees of Defendants MEDLINE

6    INDUSTRIES, INC.; and DOES 1 through 50, inclusive.  At all times mentioned herein, the

7    currently named Plaintiff was and is a residents of the County of San Bernardino, State of

8    California.  Plaintiff Jesus Leyva worked as an hourly non-exempt employee.

9        8.    Defendants MEDLINE INDUSTRIES, INC.; and DOES 1 through 50 are

10   manufacturers and distributors of medical products, and operate a number of facilities in

11   California, including but not limited to warehouses in San Bernardino and Lathrop.  Upon

12   information and belief, Defendants employ in excess of hundreds of employees in California,

13   many of whom perform non-exempt work in a facility such as the one at which Plaintiff worked.

14   Upon information and believe, these employees (including Plaintiff) are paid hourly compensation

15   plus commissions, bonuses or other incentive compensation, including but not limited to

16   compensation described as "Attendance Bonus" and "IPP Bonus" and "Stimulus Bonus" and

17   "Warehouse Bonus" on their pay stubs.  Pursuant to subsection 2(F) of the Industrial Welfare

18   Commission (IWC) Wage Order 1-2001, published at 8 Cal. Code of Regs. §11010), each of the

19   above Defendants is an employer with respect to the state law claims alleged herein.

20

21       B.    Description of Defendant MEDLINE INDUSTRIES, INC.'S Illegal Pay

22             Practices

23       9.    Failure to Include Commission, Bonuses or Other Incentive Compensation in

24   Calculating Overtime or Double-Time Rate: Defendants MEDLINE INDUSTRIES, INC.; and

25   DOES 1 through 50 employ many employees—including the named Plaintiff and all others

26   similarly-situated—with a compensation structure that includes (*inter alia*) hourly rate

27   compensation plus commissions, bonuses or other incentive compensation designed to increase the

28

- 4 -

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   employee's efforts, production, sales and/or service.  These include, but are not necessarily limited

2   to, commissions and bonuses, including but not limited to compensation described as "Attendance

3   Bonus" and "IPP Bonus" and "Stimulus Bonus" and "Warehouse Bonus" on their pay stubs.  At

4   times, Plaintiff and the class of current and former employees on whose behalf this action is filed,

5   worked overtime hours under state or federal law (or both), yet the aforementioned bonuses or

6   other incentive compensation were not included in their "regular rate of pay" for purposes of

7   calculating their overtime or double-time wages.

8       10.   Under California law, in determining the regular rate of pay for purposes of

9   calculating the proper overtime premium pay (and double-time premium pay) the employer must

10  consider not only straight hourly wage compensation but also other forms of compensation

11  (including bonuses, etc.).

12      11.   California Labor Code section 200 defines wages as "all amounts for labor

13  performed by employees of every description, whether the amount is fixed or ascertained by the

14  standard of time, task, piece, commission basis or other method of calculation."  Given

15  California's definition of "wages," the California Division of Labor Standards Enforcement

16  (DLSE) Enforcement Policies and Interpretations Manual explains that: "In California, as with the

17  federal FLSA, overtime is computed based on the regular rate of pay.  The regular rate of pay

18  includes many different kinds of renumeration, for example: hourly earnings, salary, piece work

19  earnings, commissions, certain bonuses, and the value of meals and lodging." DLSE 2002

20  Enforcement Policies & Interpretations Manual, §49.1.2; see also 29 C.F.R. §778.208, et seq.; see

21  also 29 C.F.R. §778.117; see also 29 C.F.R. §§778.118, et seq.

22      12.   Despite that both federal and California law require employers to include these

23  bonuses as part of the regular rate for determining overtime premium pay (and double-time

24  premium pay), Defendants here entirely excluded these bonuses earned by its employees in

25  calculating the premium pay rates.

26      13.   Unlawful "Time-Shaving" Leading to Minimum Wage and Overtime Violations:

27  Defendants also maintained a practice of failing to pay their non-exempt, hourly workers who

28

- 5 -

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   worked in warehouse type facilities for all hours worked. Specifically, upon information and

2   belief, Defendants' time-keeping system was programed (or Defendants took some other action) so

3   that the time-keeping system did not pay all employees for all hours worked according to the

4   employee time punches. Instead, the time-keeping system shaved time which resulted in

5   employees not being compensated for all hours actually worked. Moreover, Defendants required

6   employees to arrive at work, clock-in and perform work or otherwise be subject to the employer's

7   control, yet this time was not compensated. Consequently, Defendants both failed to pay

8   minimum wages for all hours worked and, to the extent that the time-shaving deprived employees

9   of what would have been overtime or double-time had the time-shaving not occurred, Defendants

10  failed to pay all overtime or double-time hours.

11       14.    <u>Pay Stub Violations</u>: California Labor Code section 226(a) provides (*inter alia*)

12  that, upon paying an employee his or her wages, the employer must "furnish each of his or her

13  employees ... an itemized statement in writing showing (1) gross wages earned, (2) total hours

14  worked by the employee, except for any employee whose compensation is solely based on a salary

15  and who is exempt from payment of overtime under subdivision (a) of Section 515 or any

16  applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned

17  and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions,

18  provided, that all deductions made on written orders of the employee may be aggregated and

19  shown as one item, (5) net wages earned, (6) the inclusive dates of the pay period for which the

20  employee is paid, (7) the name of the employee and his or her social security number, (8) the name

21  and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect

22  during the pay period and the corresponding number of hours worked at each hourly rate by the

23  employee."

24       15.    Defendants here failed to provide its California employees who worked overtime

25  and/or double-time proper and accurate itemized pay stubs.

26

27

28

- 6 -

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

C.       Class Action Allegations

16.      The state law claims asserted in this action have been brought and may properly be maintained as a class action pursuant to the provisions of California Code of Civil Procedure section 382, and other applicable law, because there is a well-defined community of interest in the litigation and the proposed classes are ascertainable.

17.      The proposed classes that Plaintiff seek to represent are composed of:

(A)     Current and former non-exempt employees of Defendants employed in California at any time beginning four years preceding the filing of this Complaint, who were employed in a position in which he or she earned commissions, bonuses or other similar compensation (including but not limited to Attendance Bonus" and "IPP Bonus" and "Stimulus Bonus" and "Warehouse Bonus"), worked more than eight (8) hours per work day and/or 40 hours per work week in any work week, and were not compensated for said overtime or double-time hours by proper premium pay in which the bonuses, commissions or similar compensation were included as part of the regular rate (hereinafter referred to as Overtime Premium Pay Class).

(B)     Current and former non-exempt, hourly employees of Defendants employed as warehouse workers in California at any warehouse facility, including but not necessarily limited to the facilities in San Bernardino and Lathrop, at any time beginning four years preceding the filing of this Complaint (hereafter referred to as the Time Shaving Class).

(C)     Current and former employees of Defendants employed in California at any time beginning four years preceding the filing of this Complaint, who were not furnished an itemized written statement semimonthly or at the time each wage payment reflecting the gross wages earned, total hours worked by the employee, all deductions, net wages earned, the inclusive dates of the pay period for which the employee is paid, the name of the employee and his or her social security number, the name and address of the legal entity that is the employer and/or all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee (hereinafter California Wage Statement Class).

-7-

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

(D)     Former employees of Defendants employed in California, who were either terminated and/or resigned from their employment at any time beginning four years preceding the filing of this Complaint, who were not paid all wages due to them at time of their resignation and/or termination as a result of the failure to include commissions and/or bonuses in the regular rate or as a result of the "time shaving" alleged herein (hereinafter California Waiting Time Class).

18.     All of the above sub-classes are collectively referred to as the California Class.

19.     There is a well defined community of interest in the litigation and the classes are ascertainable:

(A)     Numerosity:  The Plaintiff classes are so numerous that the individual joinder of all members is impractical under the circumstances of this case.  While the exact number of class members in each sub-class is unknown to Plaintiff at this time, Plaintiff is informed and believes and thereon alleges that, in California, well over 100 current and former employees of Defendants qualify for each sub-class of the California Class.

(B)     Common Questions Predominate:  Common questions of law and fact exist as to all members of the California Class and predominates over any questions that affect only individual members of each sub-class.  Common questions predominate, in part, because the violations that give rise to the Complaint are part of centralized management policies and practices by which Defendants treat all sub-class members similarly.  In other words, Defendants created illegal policies and/or practices and applied those policies and/or practices uniformly to the California Class.  The common questions of law and fact include, but are not limited to:

(I)     Whether Defendants unlawfully failed to properly calculate the regular rate for overtime premium pay by failing to include bonuses as part of the regular rate?

(ii)    Whether Defendants unlawfully failed to properly calculate the regular rate for double-time premium pay by failing to include bonuses or other similar incentive compensation as part of the regular rate?

(iii)   Whether Defendants' practice of "time shaving" as alleged herein violated California law because it resulted in a failure to pay for all hours worked?

- 8 -

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

(iv)    Whether Defendants' practice of "time-shaving" as alleged herein resulted in minimum wage violations?

(v)    Whether Defendants' practice of "time shaving" as alleged herein resulted in overtime or double-time violations?

(vi)    Whether Defendants unlawfully failed to furnish the Wage Statement Class with proper itemized wage statements?

(vii)    Whether Defendants, by engaging in the other violations described above, willfully failed to pay all wages due on termination or resignation to employees of the Waiting Time Class?

(viii)    Whether Defendants violated Business & Professions Code section 17200 by their wage and hour practices, including by: failing to properly determine the regular rate for purposes of determining overtime and double-time premium pay, by engaging in the "time shaving" as alleged herein, by failing to furnish correct itemized wage statements, etc.?

(C)    **Typicality:** The named Plaintiff's claim is typical of the claims of the class members in each of the sub-classes. The named Plaintiff was deprived of proper premium pay for both overtime and double-time because of Defendants' failure to include commissions and bonuses as part of determining the regular rate. The named Plaintiff was also deprived of compensation for all hours worked as a result of the "time shaving" alleged herein. The named Plaintiff was denied all wages due at the times of their terminations/resignations because of the above-described violations. Finally, the named Plaintiff was furnished incorrect and/or incomplete wage statements.

(D)    **Adequacy of Representation:** Plaintiff will fairly and adequately protect the interests of the members of each class. Plaintiff has no interest that is adverse to the interests of the other class members.

(E)    **Superiority:** A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of each

- 9 -

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  sub-class is impractical, class action treatment will permit a large number of similarly-situated

2  persons to prosecute their common claims in a single forum simultaneously, efficiently, and

3  without the unnecessary duplication of effort and expense that numerous individual actions would

4  engender.  The expenses and burdens of individual litigation would make it difficult or impossible

5  for individual members of each class to redress the wrongs done to them, while important public

6  interests will be served by addressing the matter as a class action.  The cost to, and burden on, the

7  court system of adjudication of individualized litigation would be substantial, and substantially

8  more than the costs and burdens of a class action.  Individualized litigation would also present the

9  potential for inconsistent or contradictory judgments.

10         (F)     Public Policy Considerations: Employers throughout California violate

11  wage and hour laws.  Current employees are often afraid to assert their rights out of fear of direct

12  or indirect retaliation.  Former employees are fearful of bringing actions because they perceive

13  their former employers can blacklist them in their future endeavors through negative references

14  and by other means.  Class actions provide the class members who are not named in the complaint

15  with a type of anonymity that allows for vindication of their rights and, simultaneously, permits

16  vigorous enforcement of California laws designed to protect workers and ensure their fair

17  treatment by employers in this State.

18                     FIRST CAUSE OF ACTION ON BEHALF OF

19                     THE OVERTIME PREMIUM PAY CLASS FOR:

20                  FAILURE TO PAY OVERTIME WAGES AT PROPER RATE

21              (CALIFORNIA LABOR CODE §§ 510 AND 1194 AND IWC WAGE

22                     ORDER 1-2001 [8 CAL. CODE REGS. §11010])

23         20.    Plaintiff incorporates paragraphs 1 through 19 above as though fully set forth

24  herein.

25         21.    At all times relevant to this Complaint, the IWC Wage Order 1-2001 provided that

26  "employees shall not be employed more than eight (8) hours in any workday or more than 40 hours

27                            - 10 -

28             COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  in any work week unless the employee receives one and one-half (1 ½) times such employee's

2  regular rate of pay for all hours worked over 40 hours in the workweek." It further provided that

3  for any work "in excess of 12 hours in any workday and for all hours worked in excess of eight (8)

4  hours on the seventh (7th) consecutive day of work in a workweek," the employee is entitled to

5  compensation of "[d]ouble the employee's regular rate of pay."

6       22.    At all times relevant to this Complaint, California Labor Code section 510 was in

7  effect and provided: "(a) Eight hours of labor constitutes a day's work. Any work in excess of

8  eight hours in one workday and any work in excess of 40 hours in any one workweek and the first

9  eight hours worked on the seventh day of work in any one workweek shall be compensated at the

10  rate of no less than one and one-half times the regular rate of pay for an employee. Any work in

11  excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate

12  of pay for an employee."

13       23.    At all times relevant to this Complaint, California Labor Code section 1194 was in

14  effect and provided: "(a) Notwithstanding any agreement to work for a lesser wage, any employee

15  receiving less than the ... legal overtime compensation applicable to the employee is entitled to

16  recover in a civil action the unpaid balance of this ... overtime compensation, including interest

17  thereon, reasonable attorney's fees, and costs of suit."

18       24.    Under California law, the determination of the regular rate of pay for purposes of

19  determining premium overtime pay must include the employee's commissions, bonuses or other

20  non-hourly compensation.

21       25.    At all times herein mentioned, Plaintiff and the class members were non-exempt

22  and subject to the overtime provisions set-forth above. Plaintiff alleges that he, and the class

23  members, worked for Defendants during shifts that consisted of more than eight (8) hours in a

24  working day and/or more than forty (40) hours in a work week. Plaintiff further alleges that he,

25  and the class members, were paid overtime compensation for such hours that did not include their

26  bonuses, commissions or other incentive compensation as part of the determination of the regular

27  rate upon which the premium pay would be calculated.

28

- 11 -

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

26.   Therefore, Plaintiff alleges that wages are due to her, and to the other class members, for all hours worked which he, as well as the other class members, were not paid proper overtime compensation as described above.  Plaintiff demands for herself, and for the class, all applicable payment of such overtime wages with interest thereon, all applicable reimbursement and penalties for their lost wages, including all appropriate penalties and interest.

27.   Plaintiff is also entitled to, and seeks on behalf of herself and all others similarly-situated, all reasonable attorney's fees and costs of suit pursuant to Labor Code section 1194.

## SECOND CAUSE OF ACTION ON BEHALF OF THE TIME SHAVING CLASS FOR: FAILURE TO PAY MINIMUM WAGES (CALIFORNIA LABOR CODE §§ 1194, 1194.2, 1197 AND 1197.1)

28.   Plaintiff incorporates paragraphs 1 through 19 above as though fully set forth herein.

29.   At all relevant times, Plaintiff and all others similarly situated, were employees of Defendants covered by California Labor Code sections 1194, 1194.2, 1197 and 1197.1.

30.   Pursuant to California Labor Code sections 1194, 1194.2 and 1197, it is unlawful for an employer to suffer or permit a California employee to work without paying wages at the proper minimum wage for all time worked, as required by the applicable IWC Wage Order (here, Wage Order 1-2001).

31.   Pursuant to IWC Wage Order 1-2001, at all times relevant hereto, "hours worked" includes "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

32.   Plaintiff and all others similarly situated were suffered and permitted, at times when they were subject to Defendants' control, to perform work for which they received no pay, pursuant to Defendants' time-shaving practices.

- 12 -

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

26.     Therefore, Plaintiff alleges that wages are due to her, and to the other class members, for all hours worked which he, as well as the other class members, were not paid proper overtime compensation as described above.  Plaintiff demands for herself, and for the class, all applicable payment of such overtime wages with interest thereon, all applicable reimbursement and penalties for their lost wages, including all appropriate penalties and interest.

27.     Plaintiff is also entitled to, and seeks on behalf of herself and all others similarly-situated, all reasonable attorney's fees and costs of suit pursuant to Labor Code section 1194.

## SECOND CAUSE OF ACTION ON BEHALF OF THE
## TIME SHAVING CLASS FOR: FAILURE TO PAY MINIMUM WAGES
### (CALIFORNIA LABOR CODE §§ 1194, 1194.2, 1197 AND 1197.1)

28.     Plaintiff incorporates paragraphs 1 through 19 above as though fully set forth herein.

29.     At all relevant times, Plaintiff and all others similarly situated, were employees of Defendants covered by California Labor Code sections 1194, 1194.2, 1197 and 1197.1.

30.     Pursuant to California Labor Code sections 1194, 1194.2 and 1197, it is unlawful for an employer to suffer or permit a California employee to work without paying wages at the proper minimum wage for all time worked, as required by the applicable IWC Wage Order (here, Wage Order 1-2001).

31.     Pursuant to IWC Wage Order 1-2001, at all times relevant hereto, "hours worked" includes "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

32.     Plaintiff and all others similarly situated were suffered and permitted, at times when they were subject to Defendants' control, to perform work for which they received no pay, pursuant to Defendants' time-shaving practices.

- 12 -

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**