UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | ED CV 11-00164-RGK (MANx) | Date | August 15, 2011 |
|---|---|---|---|
| Title | **LEYVA v. MEDLINE INDUSTRIES, INC.** | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| Not Present | | Not Present | |

**Proceedings:** (IN CHAMBERS) Order Re: Plaintiff's Motion for Class Certification (DE 37)

**I.  INTRODUCTION**

On October 29, 2010, Jesus Leyva ("Leyva" or "Plaintiff"), on behalf of himself and other employees, filed a class action suit against Medline Industries, Inc. ("Medline" or "Defendant"). The action, originally filed in state court, was removed to federal court on January 26, 2011.

Plaintiff's Complaint asserts claims under the California Labor Code, the California Business and Professions Code, and Wage Order 1-2001 promulgated by California's Industrial Welfare Commission. Plaintiff alleges that Defendant violated these provisions by maintaining an unlawful work time rounding practice and failing to include certain bonuses for the purposes of computing overtime pay.

Before the Court is Plaintiff's Motion for Class Certification. For the following reasons, the Court **DENIES** Plaintiff's Motion.

**II.  FACTUAL BACKGROUND**

Plaintiff alleges the following facts:

Plaintiff was employed by Medline in the receiving department at its San Bernardino/Fontana facility. Medline is a manufacturer and distributor of medical products with hundreds of employees at facilities across California. The firm's business practices violate California's wage and hour laws. Specifically, the following practices are unlawful: (1) failing to include certain bonuses for the purposes of computing overtime pay; (2) failing to pay employees for all hours worked; (3) failing to pay all wages due to its employees upon the termination of their employment; and (4) failing to provide accurate paystubs to employees.

Plaintiff's proposed classes are as follows:

1. "Bonus/Overtime Class": All persons currently or formerly employed by Defendant within the State of California, classified as non-exempt from overtime wages, who were eligible for and received any type of bonus compensation at any time during the period of four years prior to the date of the commencement of this action through the date of final disposition of this action.
2. "Rounding Class": All persons currently or formerly employed by Medline at Defendant's Fontana/San Bernardino facility (other than persons employed as drivers) at any time during the period of four years prior to the date of the commencement of this action through the date of final disposition of this action.
3. "Waiting Time Class": All members of either the Bonus/Overtime Class or the Rounding Class who were terminated, resigned or otherwise separated from employment with Defendant at any time during the period of three years prior to the date of the commencement of this action through the date of final disposition of this action.
4. "Wage Statement Class": All members of either the Bonus/Overtime Class or the Rounding Class who were employed by Defendant at any time during the period one year prior to the date of final disposition of this action.

(Pl.'s Notice of Mot. for Class Certification 2:8-3:2.)

In support of the Motion, Plaintiff has submitted the deposition testimony of David Bernier, the Director of Payroll Operations for Medline. (Bernier Dep. 32:21-33:15.) Bernier testified that from October 29, 2006 to May 19, 2011, Medline's policy for factoring bonuses into the regular wage rate to compute overtime pay applied uniformly to all non-exempt employees in California. (Bernier Dep. 19:4-8, 52:13-53:16.) In other words, if a type of bonus was not factored into an employee's regular wage rate to compute overtime pay, that type of bonus would not be used to compute the overtime pay for any of Medline's California employees.

Bernier further stated that from October 29, 2006 to April 24, 2011, Medline maintained a 29-minute rounding policy which applied to all employees, excluding drivers, at the Fontana/San Bernardino facility. (Bernier Dep. 20:1-15, 30:3-31:4.) Under this policy, if an employee that was scheduled to begin working at 8:00 a.m. clocked in at 7:31 a.m., the employee's start time would be rounded up to 8:00 a.m. (Bernier Dep. 21:6-21.) To determine if Plaintiff had lost any time due to the rounding policy, Bernier conducted a study using a query on the Kronos timekeeping database. (Bernier Dep. 114:10-115:23.) Bernier found that Plaintiff was not credited 14 to 17 hours of work time during the period from October 29, 2006 to November 2009. (Bernier Dep. 114:10-22, 119:4-8.) Bernier testified that he could run the same query for each of the putative class members to determine their hours lost. (Bernier Dep. 115:24-116:5.)

Bernier also established that Medline's California employees received paystubs on a standard form between October 26, 2008 and October 26, 2009. (*See* Bernier Dep. 121:1-21.)

## II.   **<u>JUDICIAL STANDARD</u>**

For certification of a class action under Federal Rule of Civil Procedure 23, the plaintiff bears the burden of establishing each of the prerequisites set forth in Rule 23(a). *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[C]ertification is proper only if the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied . . . ." *Wal-Mart Stores, Inc. v. Dukes*, No. 10–277, 2011 WL 2437013, at *7 (U.S.

June 20, 2011) (citations omitted) (internal quotation marks omitted). Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(a)'s requirements are also known as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

"Frequently [the] 'rigorous analysis' [of Rule 23(a)] will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 2011 WL 2437013, at *7. However, "[a]lthough some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003) (citations omitted) (internal quotation marks omitted).

In addition to finding that the requirements of Rule 23(a) have been satisfied, the Court must find that at least one of the following three conditions of Rule 23(b) are satisfied: (1) the prosecution of separate actions would create risk of (a) inconsistent or varying adjudications, or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 2011 WL 2437013, at *7. "[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question . . . ." *Id.* (internal quotation marks omitted).

### III.     DISCUSSION

The putative classes appear to meet the requisites of Rule 23(a). Nevertheless, because the classes fail to satisfy Rule 23(b)(3), the Court finds that certification is improper.

#### A.     Numerosity

The numerosity requirement is presumably satisfied when the putative class consists of forty or more putative members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, the number of members of each putative class weighs in favor of establishing numerosity. With respect to the Bonus/Overtime Class, there were 113 recipients of safety bonus during 2010 alone. (Bernier Decl. ¶ 15, ECF No. 29-1.) Moreover, approximately 180 employees meet the criteria of the Rounding Class. (Bernier Dep. 29:2-18, 123:21-124:26.) Further, there are 204 putative members of the Waiting Time Class. (Def.'s Notice of Removal ¶ 64.) Lastly, there are 304 members of the putative Wage Statement Class. (Def.'s Notice of Removal ¶ 62.) Therefore, the numerosity requirement is satisfied as to each class.

#### B.     Commonality

Commonality requires each putative class member's claims to "depend upon a common contention" whose "truth or falsity will resolve an issue central to the validity of each one of the claims in one stroke." *Wal-Mart*, 2011 WL 2437013, at *7. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citations omitted) (internal quotation marks omitted).

### 1. *Bonus/Overtime Class*

The Bonus/Overtime Class satisfies the commonality requirement. Plaintiff has established the existence of a company policy for factoring bonuses into the regular rate that applied uniformly to all non-exempt Medline personnel employed in California. (Bernier Dep. 52:13-53:16.) The existence of a uniformly applied policy allows the Court to generate a common answer to the following legal question which is central to all of the Bonus/Overtime Class member's claims: whether the failure to include certain bonuses in the calculation violates California law. If all of the legally-required bonuses were factored into the regular rate, Defendant is not liable to the Bonus Class. If the policy provided that some of the bonuses (which by California law were required to be factored into the regular rate) were not to be factored into the regular rate, Defendant may be liable to class members who earned those bonuses.

### 2. *Rounding Class*

Plaintiff has established the existence of a company policy for 29-minute timecard rounding which applied uniformly to all nonexempt employees (excluding drivers) who worked at Defendant's Fontana/San Bernardino Facility. (Bernier Dep. 20:19-22:4, 30:3-31:4.) The existence of a uniformly applied policy allows this court to generate a common answer to the following legal question which is central to all of the Rounding Class Member's claims: whether the 29-minute rounding practice is unlawful. If the 29-minute rounding practice is legal, Defendant is not liable to the Rounding Class. If the 29-minute rounding practice is illegal, Defendant may be liable to those class members who were injured as a consequence.

### 3. *Waiting Time Class and Wage Statement Class*

By virtue of their derivative nature, the next two classes seem to satisfy commonality. The Waiting Time Class is a subclass of the Bonus and Rounding Classes. It is composed of members of those classes who, within three years prior to October 29, 2010, were terminated by Medline. The putative members of the Waiting Time Class allege that Medline failed to pay them all of the wages due upon termination because certain bonuses were not factored in for the purposes of computing overtime pay and/or they were "short-changed" by Medline's purportedly illegal rounding practice. Therefore, there is a substantial factual overlap between the claims of the first two classes and those of the Waiting Time Class.

The same reasoning applies to the Wage Statement Class. Once again, this is a subclass of the Bonus/Overtime and Rounding Classes.  It is composed of members of those classes who, within one year prior to October 29, 2010, worked for Medline. Medline allegedly failed to pay them all of the wages due because certain bonuses were not factored in for the purposes of computing overtime pay and/or they were "short-changed" by Medline's purportedly illegal rounding. Consequently, if a putative class member was either denied the appropriate overtime pay or was "short-changed" by the rounding practice, the wrong wage amounts would appear on the standardized paystub Medline provided to its employees.

### C. Typicality

"[A] 'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Because Plaintiff advances the same claims as those of the putative class members, the Court finds that the typicality requirement is satisfied.

### D. Adequacy of Representation

Plaintiff and his counsel appear to meet Rule 23(a)(4)'s adequacy requirements.

Rule 23(a)(4) requires "(1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1185 (9th Cir. 2007). When appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; (iv) and the resources counsel will commit to representing the class."
Fed. R. Civ. P. 23(g)(1)(A).

#### 1. *Leyva's Purported Credibility Problems*

Defendant claims that, because Plaintiff admitted that the social security number which appears on his Medline employment application is inaccurate and different from the one that he uses now, Plaintiff is an inadequate class representative due to credibility problems. The Court disagrees.

A putative class representative's credibility problems can be fatal to class certification. *See Kline v. Wolf*, 702 F.2d 400, 402-03 (2d Cir. 1983). However, the Court concludes that in order to defeat class representation, any allegations concerning the representative's adequacy must be relevant to the claims in the litigation. Other courts facing this issue have reached a similar conclusion. *See, e.g., German v. Federal Home Loan Mortg. Corp.*, 168 F.R.D. 145, 154 (S.D.N.Y. 1996); *Koppel v. 4987 Corp.*, 191 F.R.D. 360, 368 (S.D.N.Y. 2000). Where Courts have found that the credibility problems of putative class representatives rendered them inadequate class representatives, the credibility issues were relevant to the claims in the litigation. *See, e.g., CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 722-28 (7th Cir. 2011); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998); *Kline*, 702 F.2d at 402-03. For example, in *Savino*, because the plaintiff repeatedly changed his position about whether he received a letter from a creditor that was the basis of his Fair Debt Collection Practices Act suit, the Second Circuit affirmed the trial court's denial of his motion for class certification. 164 F.3d at 87.

Here, Defendant does not claim that Plaintiff's use of an inaccurate Social Security number and/or multiple Social Security numbers has any relevance to the claims in the litigation. Defendant does not contend that Plaintiff's conduct will in any way prevent him from being able to recover damages under state law. During Leyva's deposition, Defendant's counsel admitted that he was not attempting to determine Leyva's immigration status for the purposes of barring recovery under state law. (*See* Leyva Dep. 23:13-24.) Since Defendant

has failed to present evidence of any credibility issue relevant to the claims in this action, Plaintiff is not rendered an inadequate representative on that basis.

###    2.    *Leyva's Purported Conflict of Interest*

Defendant claims that because Leyva is reserving his right to sue it for disability discrimination, Leyva has a conflict of interest which renders him an inadequate class representative. It appears that Defendant is contending that the existence of this potential claim creates the possibility that Defendant will offer to settle Leyva's disability discrimination claim if he voluntarily dismisses the present action. This would obviously disenfranchise the putative class members. Nevertheless, the Court disagrees with Defendant's contention.

A putatitve representative will not be found inadequate based on a potential future conflict of interest which may never materialize. *See Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 680 (7th Cir. 2009). If a potential conflict does materialize after a class has been certified, the court may cure it by replacing the conflicted Plaintiff with a new class representative. *See, e.g.*, *Hernandez v. Balakian*, 251 F.R.D. 488, 491 (E.D. Cal. 2008) (ordering plaintiff's counsel to substitute the class representative when the representative's arrest rendered him inadequate).

Just as the conflicts of interest in *Kohen* were hypothetical, so too is Leyva's conflict of interest. Leyva has yet to even file any claim for disability discrimination. Therefore, because the Court can simply substitute Leyva if a conflict of interest arises, the Court will not deem Leyva to be an inadequate class representative.

###    3.    *Qualified and Competent Class Counsel*

When appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; (iv) and the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

With respect to the first factor, Plaintiff has submitted evidence that his attorneys have spent many hours investigating potential claims of the putative class and engaging in discovery. (deRubertis Decl. ¶ 25.) Moreover, Plaintiff has submitted evidence that counsel have been involved in numerous class action wage and hour suits. (*E.g.*, deRubertis Decl. ¶ 15; Ebrahimian Decl. ¶ 3.) Furthermore, the record indicates that one of Plaintiff's attorneys is an authority on California law governing wage and hour disputes. (*e.g.*, deRubertis Decl. ¶ 22-23.) Plaintiff has also submitted evidence that his attorneys have a great deal of experience in the area of employment law. (*E.g.*, Ebrahimian Decl. ¶ 3.) Finally, Plaintiff's counsel have sworn that they will commit the resources necessary to prosecute this case to its conclusion if the classes are certified. (deRubertis Decl. ¶ 24.) Therefore, these attorneys are adequate representatives.

### E. Rule 23(b)(3)

Plaintiff contends that each of the classes satisfy Rule 23(b)(3) because common questions predominate over questions affecting individual members and a class action is superior to the other available methods for fairly and efficiently adjudicating the controversy. The Court disagrees.

#### 1. *Individual Questions Predominate Over Common Questions*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Here, although Plaintiff appears to have established that common questions exist with respect to Defendant's liability under state law, the damages inquiry will be highly individualized. Each of the 500 putative class members are allegedly entitled to different damage awards for being "short-changed" by the rounding policy and/or the bonus policy. Because evaluating each putative class member's claims would require fact-specific, individualized inquiries into the amount of pay to which he or she was entitled, the Court finds that individual questions predominate over common questions in this case. Therefore, the proposed classes are not sufficiently cohesive to warrant adjudication by representation.

#### 2. *Superiority*

Plaintiff contends that the proposed classes satisfy the superiority prong of Rule 23(b)(3). The Court disagrees.

The Court must consider several factors when determining whether the class action device is superior: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability and undesirability of concentrating the litigation of the claims in the particular forum; (D) and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(A)–(D).

Although the other three factors may suggest that the class action is the superior means of adjudication, the manageability factor overwhelmingly weighs against certification. Manageability of a class action is "peculiarly within the district court's discretion . . . ." *Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010). As discussed earlier, if these four classes were certified, the Court would need to determine the extent to which each putative class member lost wages and, consequently, suffered damages. Since there are more than 500 putative class members, this process would tax the Court's resources. Moreover, adjudicating this matter would require the Court to determine which of several bonuses offered by Medline to different putative class members were "nondiscretionary" and therefore should have been factored into the overtime pay calculation. Furthermore, employees within the bonus group each received different bonuses at different pay periods. Therefore, the Court finds that alternative methods for resolving this dispute are superior because of the likely difficulties in managing this case as a class action.

## IV. CONCLUSION

For the foregoing reasons, Certification is **DENIED**.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer  slw | slw |